**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

CONTINENTAL CASUALTY COMPANY,   *

        Plaintiff,   *

   v.                                     Civil Action No. AW-05-1082

                            *

CONROY, BALLMAN, & DAMERON,
CHTD., *et al.*,   *

        Defendants.   *
                          * * * * *

**MEMORANDUM OPINION**

Continental Casualty Company ("Continental" of "Plaintiff") brings this suit against Conroy, Ballman, & Dameron, Chartered ("CBD"), Lynn Kromminga ("Kromminga"), a former attorney at CBD, and First Guaranty Mortgage Corporation ("First Guaranty") (collectively, "Defendants") seeking a declaration that it need not provide defense or indemnity coverage for the claims made in the civil action *First Guaranty Mortgage Corporation v. Bryant*. Currently pending before the Court are Plaintiff's Motion for Judgment on the Pleadings, or in the Alternative for Summary Judgment [21] and Defendant CBD's Motion to Stay These Proceedings [25]. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motions and has determined that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated more fully below, the Court will deny CBD's Motion to Stay as moot, and Plaintiff's motion, which the Court will treat as a Motion for Summary Judgment, is granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are taken in the light most favorable to Defendants. From November 1993 to August 1999, Defendant Kromminga engaged in the practice of law at CBD.[1]

---

[1] The firm of CBD is now defunct.

While at CBD, Kromminga allegedly began a real estate "flipping scheme" with John Bryant and others. As part of this illicit activity, real estate investors would purchase distressed properties using borrowed funds. The buyer would obtain the loan for an amount greater than the value and sales price of the property. The buyer then would purchase the property and generate a profit on the same, which could fund a portion of the buyer's costs. To effectuate this scheme, Defendant Kromminga and others allegedly falsified HUD documents and made various other false statements. Ultimately, Defendant Kromminga and nine other individuals were charged with criminal conspiracy, pursuant to 18 U.S.C. § 371. The indictment alleged that Kromminga committed certain overt acts, which served as predicates to the conspiracy, as early as November 1998.

In June of 2004, Kromminga entered into a plea bargain agreement with the United States Attorney in the criminal case and admitted to participating in a single conspiracy under 18 U.S.C. § 371. In his signed plea agreement, Kromminga acknowledged that he "did knowingly, willfully, and unlawfully, combine, conspire, confederate, and agree with John Bryant, and others known or unknown, to defraud mortgage lenders and financial institutions, and for the purposes of influencing in any way the action of HUD, to knowingly pass, utter, and publish statements, knowing same to be false." *See* Plea Agreement. Subsequently, this Court sentenced Kromminga on October 1, 2004 to one year and one day in federal prison, three months of supervised probation, ordered him to pay a $100 assessment, a $3,000 fine, and $299,479.19 in restitution to HUD and other mortgage lenders.

On November 14, 2004, one of these lenders, First Guaranty, brought suit against Kromminga, CBD, and fourteen other defendants, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and other common law torts as well as breach of contract

2

(the" First Guaranty Action").

To pay the legal fees associated with this suit, CBD and Kromminga filed claims under their professional liability policy issued by Continental (the "Policy"). Continental first issued the Policy in April 1999 and continually renewed the Policy through the 2003-2004 policy year. The Policy generally obligated Continental to pay all sums in excess of the deductible for damages and claim expenses made against CBD, as well as its attorneys, during the policy period, for acts and omissions in its provision of legal services. The Policy, however, enumerates several conditions, including a provision that excepts from coverage any conduct that occurred "prior to . . . the inception date of the first policy issued by the Company. . .if continuously renewed; or . . .the date the Insured first became a member or employee of the Named Insured" if any insured "had a basis to believe that any such act or omission, or related act or omission, might reasonably be expected to be the basis of a claim." *See* The Policy, at 1 (the "Prior Knowledge Exclusion"). In addition, the Policy disavows any coverage of "any claim based on or arising out of any dishonest, fraudulent, criminal or malicious act or omission by an Insured . . .The Company shall provide the Insured with a defense of such claim unless or until the dishonest, fraudulent, criminal or malicious act or omission has been determined by any trial verdict, court ruling, legal admission, whether appealed or not. Such defense will not waive any of the Company's rights under this Policy " *See id.* at 8.

Seeking to adjudicate its rights under the Policy, Continental filed the instant suit on April 21, 2005. After all parties entered an appearance in this case, Continental filed a Motion for Judgment on the Pleadings, or in the Alternative for Summary Judgment on November 4, 2005. CBD responded to this motion and filed a Motion to Stay the Proceedings. Currently, both Motions are ripe and ready for disposition, and the Court shall now issue an Opinion.

## DISCUSSION

I. **CBD's Motion to Stay**

Based on the Maryland State Court of Appeals case, *Allstate Insurance Company v. Atwood*, 575 A.2d 154 (Md. 1990), CBD has moved to stay this case. The *Allstate* decision exemplifies a line of Maryland cases, which hold that normally an insurer should not bring declaratory judgments in advance of tort trials to resolve the issues presented in the pending tort cases. *Id.* at 157; *see also Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842 (Md. 1975) (stating that ordinarily insurer must provide a defense to the insured and is prohibited from bringing a declaratory action before the conclusion of the underlying tort trial).

On December 20, 2005, Judge Quarles issued a memorandum opinion and order dismissing CBD from the First Guaranty Action. The disposition of the underlying tort action has rendered *Allstate* inapposite, and the Court need not stay this action against CBD to avoid any conflict of interest which may arise between CBD and Continental. Because of Judge Quarles' order, this Court will deny CBD's motion as moot.

II. **Continental's Motion for Judgment on the Pleadings**

A. Standard of Review

Rule 12(c) provides that "if, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion should be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(c); *see also Kaiser Aluminum & Chem. Corp. v. Westinghouse Elec. Corp.*, 981 F.2d 136, 140 (4th Cir. 1992). As the Plaintiff has submitted additional materials with its pleadings, the Court will consider Plaintiff's Motion for Judgment on the Pleadings as a Motion for Summary Judgment.

Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). Once the moving party discharges its burden by showing there is an absence of evidence to support the nonmoving party's case, *Catrett*, 477 U.S. at 325, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

B.   <u>Construction of the Policy</u>

To interpret provisions in the Policy, the Court must begin by looking to Maryland law.[2] Under Maryland law, insurance policies are interpreted in the same manner as contracts generally; and Maryland law does not adhere to the rule that an insurance policy should be construed most strongly against the insurer. *See Collier v. MD-Individual Practice Ass'n,* 607 A.2d 537, 539 (Md. 1992). As with all other contracts, a court must attempt to ascertain and give effect to the intentions of the parties at the time of contracting. *See Levy v. American Mut. Liab. Ins. Co.*, 73 A.2d 892, 894 (Md. 1995). To determine the parties' intent, the court must view the instrument as a whole, attributing to each word its normal or customary meaning, unless some indication exists that the parties intended to use words in a special technical sense. *See Kendall v. Nationwide Ins. Co.*, 702

---

[2] When presented with choice-of-law questions, Maryland courts ordinarily follow the rule of *lex loci contractus,* which provides that the construction of a contract be determined by the law of the state where the contract was made. *Commercial Union Ins. v. Porter Hayden Co.*, 698 A.2d 1167, 1199 (Md. 1997); *Allstate Ins. Co. v. Hart,* 611 A.2d 100, 101 (Md. 1992). Parties seem to agree that the contract was made in Maryland, and that, therefore, Maryland law governs the interpretation of the insurance policy's provisions.

A.2d 767, 771 (Md. 1996);  *Sullins v. Allstate Ins. Co.,* 667 A.2d 617, 619 (Md. 1995); *Nolt v. United States Fidelity & Guar. Co.,* 617 A.2d 578, 584 (Md. 1993); *Collier,* 607 A.2d at 539. While the character of the contract, its object and purposes, and the factual circumstances of the parties at the time of execution may assist in interpreting the meaning of a particular contractual provision, clear and unambiguous language must be enforced as written. *See Dutta v. State Farm Ins. Co.*, 769 A.2d 948, 957 (Md. 2001); *Board of Trustees of State Colleges v. Sherman,* 373 A.2d 626, 629 (1977) ("where a contract is plain and unambiguous, there is no room for construction").

The first exclusion provides that Continental agrees to provide coverage for claims and expenses made against CBD provided that:

> prior to:
> a.  The inception date of the fist policy issued by the Company or any subsidiary or affiliate of the Company, if continuously renewed; or,
> b.  The date the Insured first became a member or employee of the Named Insured or Predecessor firm,
> whichever is later, no Insured had a basis to believe that any such act or omission, or related act or omission, might reasonably be expected to be the basis of a claim.

The Prior Knowledge Exclusion bars coverage where any insured at the effective date "had a basis to believe that any such act or omission, or related act or omission, might reasonably be expected to be the basis of a claim."  Maryland courts have applied an objective standard to prior knowledge exclusions, such as the present, when determining whether an insured had knowledge of a potential claim.  *See, e.g.*, *Culver v. Continental Ins. Co.*, 1 F. Supp. 2d 545, 546 (D. Md. 1998) ("No lawyer receiving [potential claimant's attorney's] letter . . . could plausibly contend that he did not have a *reasonable basis* to foresee a claim against him on the basis of the contents of that letter.") (emphasis added); *Maynard v. Westport Ins. Co.*, 208 F. Supp. 2d 568, 571 ("Plaintiffs concede that

6

an objectively reasonable attorney would or should have known of the potential malpractice.").

In this case, Defendant Kromminga has admitted in his plea agreement that he knowingly and willfully became a member of the conspiracy to "flip" properties, which began in Spring of 1998 and continued through Fall of 2000, and that he committed overt acts in furtherance of that unlawful agreement. Specifically, in the plea, Kromminga stipulated to the following facts: "Beginning in or about 1998 and continuing until July, 1999, Lynn Kromminga . . . did knowingly, willfully, unlawfully, combine, conspire, confederate, and agree with John Bryant . . . to defraud mortgage lenders and financial institutions. . . . The defendant met John Bryant, for whom he performed at least 17 unlawful 'flip' transactions." Plea Agreement, at 4. The indictment lists several of these conveyances, including the sale of the property 7662 N. Arbory Way, Laurel, Maryland. According to Count One of the criminal indictment, Kromminga ordered a title abstract on that property in or about November 1998 that reflected that John Bryant did not own the property, but in January 1999 Kromminga caused an abstractor to record that John Bryant owned the property as of the date that Bryant "flipped the property" to the buyer.

As a general rule, a plea of guilty to a criminal charge may be introduced in a subsequent civil proceeding as an admission. *See* Fed. R. Evid. 803(22); *see also Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842, 848 (Md. 1975); *Campfield v. Crowther*, 249 A.2d 168 (Md. 1969). CBD questions the veracity of the admissions in the plea agreement, stating that factors, such as Kromminga's age, health, family, and financial circumstances, may have compelled him to enter into the plea agreement.[3] Defendant CBD, however, does not attach affidavits or other proof to

---

[3] CBD also points out that the original plea agreement attached to Plaintiff's pleadings was not sworn. Plaintiffs have proffered the Judgment of Conviction, which under the Federal Rules of Evidence is self-authenticating. *See* Fed. R. Evid. 803.

7

support these theories. Because of the lack of evidence to rebut this admission, this Court will deem the guilty plea an admission.

The next logical question then is whether Defendant Kromminga knew or should reasonably have known that these prior acts could serve as the basis of a claim. In the plea, Kromminga concedes that, prior to April 199, he began defrauding the federal government as well as other entities. Kromminga's admissions amply support Plaintiff's assertion that a reasonable person would have expected that the victims of this fraud could assert a claim against him and/or CBD. Furthermore, the plea shows that Kromminga was or should have been aware of these potential claims on or before April 1, 1999, the effective date of the policy.

Although this Court has ruled that Kromminga had a basis to believe or should have reasonably expected that certain acts could be the basis of a claim, the Prior Knowledge Exclusion only applies if these acts were related to the conduct alleged in the First Guaranty Action. Kromminga has admitted his involvement in the flipping scheme from Fall 1998 to 2000 with several other individuals and organizations. The First Guaranty Action amended complaint asserts that Kromminga "would also often falsify documents to show that Defendant Bryant had purchased the property." First Guaranty Amend. Compl.¶ 179. The amended complaint also alleges that Kromminga made false statements to First Guaranty and defrauded the corporation. The factual assertions underlying this claim are the same as those in Count I of the criminal matter, and there is substantial overlap in these actions. Both involve many of the same players; in both cases, Kromminga was in essentially the same role; and the purported scheme was the same. Based on these similarities, the Court finds that the acts which Kromminga should have reasonably known could give rise to a claim are "related" to the acts which could, and did, give rise to the First

8

Guaranty Action.

Finally, this finding necessarily leads this Court to conclude that the Prior Knowledge Exclusion bars coverage for the negligence claim against CBD. The Policy states that Continental will not provide coverage under the Policy if "any Insured"should have expected that his acts or omission would be the basis of the claim. Neither party disputes that on the effective date of the Policy Kromminga was one of the insured. The broad language of the Policy bars coverage if any insured had prior knowledge and does not restrict this prohibition to claims against the individual. Rather, the plain language bars coverage as to the firm even if an individual possessed the prior knowledge.

Defendant attempts to salvage its case by contending that summary judgment would be inappropriate in cases, like this one, where reasonableness is quite often a question of fact. This Court is unpersuaded. In *Culver*, the Court expressly stated that "[a]lthough reasonableness is quite often a question of fact, summary judgment may properly be granted where, for example, no reasonable fact finder could come to a different conclusion than that a certain state of affairs was reasonably foreseeable." *Culver*, 1 F. Supp. 2d at 547. Because the evidence shows that Defendant Kromminga should have reasonably expected the First Guaranty Action, Plaintiff is entitled to summary judgment.[4]

Defendant CBD also raises Rule 56(f) concerns. This court has carefully considered CBD's argument and the relevant caselaw. After reviewing this material, this Court finds that discovery on this matter would not lead to any genuine issues of fact and is therefore unnecessary.

---

[4] Having decided this case on other grounds, this Court need not address the Plaintiff's argument that Section IV.A also bars coverage for claims against Kromminga.

Accordingly, for reasons explained above, this Court denies Defendant's request for such discovery. *See Strag v. Board of Trustees,* 55 F.3d 943, 954 (4th Cir.1995) (holding that a court may denial a Rule 56(f) motion "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment").

## **CONCLUSION**

For the reasons set forth above, this Court will grant Plaintiff's Motion for Summary Judgment [21] and deny Defendant CBD's Motion to Stay These Proceedings [25], as moot. An Order consistent with this Opinion will follow.

Date: March 23, 2006                                                              /s/
                                                                    Alexander Williams, Jr.
                                                                    United States District Court